IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

Case No. 4:20-CR-00016-M
Case No. 4:24-CV-00020-M

ANTOINETTE CHARMANE BECTON,

    Petitioner,

v.                                                                                    ORDER

UNITED STATES OF AMERICA,

    Respondent.

       This matter comes before the court on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 [DE 229] and the United States' Motion to Dismiss the § 2255 petition [DE 233]. The court finds that, except for a single issue, the petition, the United States' motion, and the record in this case conclusively show that Petitioner is entitled to no relief; therefore, a hearing will be held only as to the single issue pursuant to 28 U.S.C. § 2255(b).[1] For the reasons that follow, the motion to dismiss is granted in part, the motion to vacate is denied in part, and the court reserves ruling in part, pending a hearing on the matter.

**I.    Case Background**

       On February 19, 2020, Petitioner was charged by indictment with Count 1 (conspiracy to distribute and possess with the intent to distribute cocaine, cocaine base, fentanyl, and a mixture and substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §

---

[1] The Fourth Circuit Court of Appeals has ruled that "a hearing is required when a movant presents a colorable Sixth Amendment claim showing disputed facts beyond the record, or when a credibility determination is necessary to resolve the claim." *United States v. McNeil*, 126 F.4th 935, 942–43 (4th Cir. 2025).

846); Count 6 (distribution of a quantity of cocaine, in violation of 21 U.S.C. § 841(a)(l) and 18 U.S.C. § 2); Count 7 (distribution of a quantity of cocaine, in violation of 21 U.S.C. § 841(a)(l), and 18 U.S.C. § 2); Count 8 (distribution of twenty-eight (28) grams or more of cocaine base (crack), in violation of 21 U.S.C. § 841(a)(l), and 18 U.S.C. § 2); and Count 9 (distribution of fifty (50) grams or more of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(l), and 18 U.S.C. § 2). DE 1. Nearly a year later, on January 27, 2021, Petitioner pled guilty pursuant to a plea agreement to a two-count Superseding Bill of Information, charging distribution of fifty (50) grams or more of a mixture and substance containing a detectable amount of methamphetamine on or about January 22, 2020, in violation of 21 U.S.C. § 841(a)(l) and 18 U.S.C. § 2, and aiding and assisting in the electronic filing of false United States Individual Tax Returns, in violation of 18 U.S.C. § 371. DE 114.

On September 23, 2021, the court held Petitioner's sentencing hearing, at which the court questioned whether Petitioner was eligible to receive application of the "safety valve." Tr. 25: 18-19, DE 160. Petitioner's counsel explained that he was Petitioner's second attorney and expressed his understanding that Petitioner had previously told the government (in meetings at which he was not present) everything she knew about criminal conduct. *Id.* 25: 22 – 26: 4. The Assistant United States Attorney, Scott Lemmon, advised the court that the government had had several meetings with Petitioner and believed she was untruthful in some respects, and that he had reached out to defense counsel over the previous months to see whether Petitioner wished to provide additional information, but she declined. *Id.* 26: 6-23. After expressing the importance of the possible application of the safety valve in this case, the court continued the hearing, over the United States' objection, for approximately forty-five days to "afford this defendant . . . the opportunity to come into compliance with the safety valve." *Id.* 30: 6 – 31: 15.

After granting additional time for meetings and the preparation of (and objections to) an amended presentence investigation report, the court reconvened for Petitioner's sentencing on February 17, 2022. The court sustained Petitioner's unopposed objection to an enhancement for obstruction of justice, calculated the applicable guidelines range (151-188 months) without further objection, and sentenced Petitioner to a total of 166 months in custody (166 months on Count 1 and 60 months on Count 2, both terms to run concurrently). DE 175, 191. Petitioner appealed her conviction and sentence to the Fourth Circuit Court of Appeals; on November 17, 2022, the Fourth Circuit dismissed the appeal, finding "that the issues Becton seeks to raise on appeal fall squarely within the scope of her waiver of appellate rights." DE 210.

Petitioner filed the present motion collaterally attacking her conviction and sentence on February 9, 2024, and (construed liberally) arguing that her counsel was ineffective in (1) failing to investigate and raise an entrapment defense; (2) failing to "inform [her] fully of the actual terms of the plea offer" concerning the drug charge; (3) failing to advise her that cooperating with the government could reduce her sentence; (4) focusing too much on the tax fraud charge and failing to advise her of her sentencing exposure for the drug charge; (5) failing to object to the government's statement that she was ineligible for the safety valve; (6) failing to object to the government's statement that CS-2 and CI-7 were different people; (7) falsely advising her that she could not withdraw her plea; (8) failing to object to her criminal history score; and (9) failing to object to the incorrect computation of the drug weight attributable to her. DE 229. Petitioner also argues that the prosecution engaged in misconduct by "lead[ing] the court to believe that there were three confidential informants, confidential sources including [her] boyfriend" when, in fact, CS-2 and CI-7 "are the same individual," and by "never inform[ing] the court that the CI was a registered sex offender." *Id.* Finally, Petitioner argues that the drug weight was miscalculated and

that a "change in the law" concerning an "unfair distinction between [mixed] methamphetamine and actual methamphetamine" supports a reduction of her sentence. *Id.*

The United States responded by filing a motion to dismiss (and memorandum in support), in which it argues that Petitioner waived her right to challenge her conviction or sentence in a collateral proceeding except based on certain limited grounds; some of Petitioner's claims, which she did not previously raise with this court or on appeal, have been procedurally defaulted; and Petitioner fails to plead sufficient facts to state a cognizable claim under § 2255.

Petitioner opposed the government's motion, noting many of the same arguments regarding her counsel's "ineffectiveness" and adding that her first counsel failed to attend her presentence interview and to advise her of "any of the issues that could have been helpful in mitigating [her] sentence" that she might share with the probation officer. DE 241. She also argues that her second counsel failed to inform the court of her cooperation efforts, her truthfulness, and her impediments to fully cooperating due to the COVID-19 pandemic and to her community's belief that she was a "snitch," as evidenced by death threats she received. *Id.* Petitioner further contends that, at the second sentencing hearing, she had to "make an objection [her]self" to paragraphs "#32 and #37 to inform the court that the two CI's (CS-2 and CI-7) were the same person." *Id.* Finally, Petitioner cites unpublished and nonbinding cases and other sources dated 2019 and earlier to support her claim of "recent changes to the law" concerning the "disparity" in the guidelines for computing base offense levels for charges involving a "mixture" of methamphetamine versus those involving "actual" methamphetamine. *Id.* The court has reviewed the entire record is fully apprised.

## II. Legal Standards

Section 2255 provides that habeas relief should be awarded when:

the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack,

4

or that there has been such a denial or infringement of the constitutional rights of
the prisoner as to render the judgment vulnerable to collateral attack.

28 U.S.C. § 2255(b). Once the petitioner has shown this, "the court shall vacate and set the

judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct

the sentence as may appear appropriate." *United States v. Pettiford*, 612 F.3d 270, 277 (4th Cir.

2010) (quoting § 2255(b)).

The government may respond to a § 2255 petition by filing a motion to dismiss pursuant

to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *United States v. Reckmeyer*, 900 F.2d

257, 1990 WL 41044, at *4 (4th Cir. Apr. 2, 1990) ("a district court may properly consider a Rule

12(b)(6) challenge to the legal sufficiency of a § 2255 petition"). In such proceedings, "the familiar

standards in Rule 12(b)(6) of the Federal Rules of Civil Procedure apply to the government's

motion to dismiss." *Walker v. Kelly*, 589 F.3d 127, 138-39 (4th Cir. 2009).

When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all of

the well-pleaded factual allegations contained within the pleading and must draw all reasonable

inferences in the pleader's favor, *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017), but

any legal conclusions proffered by the pleader need not be accepted as true, *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained

in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause

of action, supported by mere conclusory statements, do not suffice."). The *Iqbal* Court made clear

that "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading

regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with

nothing more than conclusions." *Id.* at 678–79.

To survive a Rule 12(b)(6) motion, the non-movant's well-pleaded factual allegations,

accepted as true, must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007). *Twombly*'s plausibility standard requires that the non-movant's well-pleaded factual allegations "be enough to raise a right to relief above the speculative level," i.e., allege "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Id.* at 555–56. A speculative claim resting upon conclusory allegations without sufficient factual enhancement cannot survive a Rule 12(b)(6) challenge. *Iqbal*, 556 U.S. at 678–79 ("where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'--'that the pleader is entitled to relief.'" (quoting Fed. R. Civ. P. 8(a)(2)); *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) ("'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" (quoting *Twombly*, 550 U.S. at 557)). Courts must view the well-pleaded facts in the light most favorable to the non-movant. *Sheppard v. Visitors of Virginia State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021).

### III.  Analysis

Petitioner's attacks on her conviction and sentence fall into three categories: ineffective assistance of counsel, prosecutorial misconduct, and a substantive change in the law.

####     A.  Ineffective Assistance of Counsel

A claim for ineffective assistance of counsel requires a showing of both "deficient performance and prejudice." *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). Deficient performance means that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Discerning this objective standard entails consideration of "professional norms." *United States v. Cannady*, 63 F.4th 259, 265 (4th Cir. 2023).

Prejudice is shown if, but for the deficient performance, "there is a reasonable probability that . . . the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Given the nuance involved in pretrial negotiations, courts strictly apply the *Strickland* standard when evaluating claims for ineffective assistance of counsel at the plea-bargaining stage, and properly exercise their "limited role" with "judicial caution." *Premo v. Moore*, 562 U.S. 115, 125 (2011).

Liberally construed, Petitioner argues that both of her attorneys were ineffective in several respects. Petitioner's first attorney, Leza Driscoll ("Driscoll"), represented Petitioner prior to and during the arraignment, and her second attorney, Geoffrey Hosford ("Hosford"), represented Petitioner prior to and during the sentencing hearings.

### 1. Hearing Issue

Petitioner claims that Driscoll failed to investigate and raise an entrapment defense prior to Petitioner's guilty plea, and that Hosford failed to investigate and move to withdraw Petitioner's guilty plea based on an entrapment defense. The court finds that Petitioner has presented colorable Sixth Amendment claims against Driscoll and Hosford showing disputed facts beyond the record and, thus, a hearing is necessary to resolve the claims. *See United States v. Mayhew*, 995 F.3d 171, 176-77 (4th Cir. 2021).

In *Mayhew*, the Fourth Circuit determined that, where the record does not conclusively establish either the commission or omission of the challenged action by counsel or that a petitioner would suffer no prejudice resulting from the challenged action, district courts must hold an evidentiary hearing to develop the record. *Id.* at 179. In particular, the *Mayhew* court found that a petitioner's § 2255 petition, signed under penalty of perjury, suffices to raise a factual question concerning disputed conduct that occurred "before [the] arraignment and before, not after,

7

[defendant] had the benefit of the court's [Rule 11] admonitions." *Id.* at 180. Furthermore, any challenge to credibility cannot be determined solely on the record. *Id.*

Here, Petitioner contends that Driscoll and Hosford "failed to review [her] discovery and were therefore willfully ill prepared to present any defenses for [her] case—specifically, a defense for entrapment." DE 229-1 at 1. Notably, Petitioner, in her allocution during her sentencing hearing, suggested that she was not fully responsible for her criminal conduct by arguing that CS-2, the person listed in the presentence investigation report (PSR) to whom she sold cocaine and methamphetamine, was "a practiced predator who was looking for his next victim, taking advantage of [her] desperate and vulnerable situation," asked her whether she "knew anyone who could get him a big eight," and "induced" her to "negotiate a drug transaction." Tr. 14: 5 – 16: 10, DE 191. Petitioner also cited three cases in support of this argument and her position that "a government agent may not implant the thought of an illegal act or use a relationship to induce another to act illegally." *Id.* 16: 11-18; 19: 14-22. In the present motion, Petitioner further argues:

> The confidential informant CI-7, CS2 (Alexander James Cogdell) a paid confidential informant induced me by his gaining my trust, by saying that a person is not doing anything wrong, by asking me to make a call for him to find drugs, then later persuading me to be part of a deal. The paid confidential informant Alexander James Cogdell (CS2, CI-7) induced me by implanting the criminal design. He used fraudulent representation by portraying to be a God-fearing man, friend companion, he used coercive tactics after talking about drugs, how he's a drug dealer, how his ex-girlfriend robbed him, how he could help me get a car and to help with financial obligations.
>
> ***
>
> Alexander Cogdell (CS-2,Cl-7) I have learned was facing charges of his own and either through conversations with his attorney or with government agents he decided to help himself out by providing information to the government and creating a crime.
>
> Alexander James Cogdell (CS-2,Cl-7) researched my background. I admittedly associated with people involved with drugs activities in the past. This association, however, did not mean that I participated in any illegal activities.

8

Alexander James Cogdell after gaining trust as you would in any romantic relationship lured me into providing him with a drug contact. He ask[ed] for me to contact anyone to pursue drugs, he deliberately made me a part of the transactions. This was done in an effort to give information to the government to build a case against someone else, this time me. This is evidenced by my lack of criminal drug activity. He created a criminal scheme - he did not join one.

The government is not allowed to lead citizens into committing crimes. The government solicited, proposed, initiated, broached and suggested the commission of the offense charged.

The government in my case allowed the informant to set me up to commit a crime that I would not have normally committed. They talked him into getting me to set up transactions on several occasions. But for my relationship with Alexander James Cogdell a paid informant (CS-2,Cl-7) I would have never engaged in this activity.

DE 229-1 at 1-2. Relying on these allegations, Petitioner asserts that Driscoll "failed to pursue this defense in any manner" and that Hosford "failed to at least seek to halt the proceedings to review the government information and investigate [her] claim." *Id.* at 2. She contends that, without such investigation, her guilty plea negotiated by Driscoll was not knowing and voluntary and that Hosford, despite Petitioner's requests, failed to investigate the defense and move to withdraw her plea.[2] The United States' only argument in response[3] relies on the fact that Petitioner was thoroughly questioned and advised during the Rule 11 colloquy at her arraignment.

Entrapment may be invoked as an affirmative defense when a defendant demonstrates that the United States induced the crime and that he or she did not have a predisposition to engage in the criminal conduct. *Mathews v. United States*, 485 U.S. 58, 62-63 (1988). To establish

---

[2] Petitioner asserts that Hosford advised her that she could not withdraw her guilty plea in contravention of Rule 11(d), which provides that a guilty plea may be withdrawn *under certain circumstances*—i.e., (a) the court rejects the plea agreement; or (b) the defendant can show a fair and just reason for requesting the withdrawal. Fed. R. Crim. P. 11(d)(2). No party disputes that the court has not rejected the plea agreement in this case.

[3] Petitioner did not raise the issue of entrapment in alleging prosecutorial misconduct. *See* DE 229-1 at 7; DE 241 at 4; *see also Vinci v. United States*, No. 5:15-CR-41-RLV-DCK-1, 2017 WL 1954541, at *4 (W.D.N.C. May 10, 2017) (recognizing such claim).

inducement, the defendant must show "governmental overreaching and conduct sufficiently excessive to implant a criminal design in the mind of an otherwise innocent party." *United States v. Daniel*, 3 F.3d 775, 778 (4th Cir. 1993) (citing *Jacobson v. United States*, 503 U.S. 540, 548 (1992)). Inducement requires more than mere "solicitation," or "the provision of an opportunity to commit a criminal act." *Id.*

Because entrapment is an affirmative defense, a defendant first bears the "initial burden" of producing "more than a scintilla of evidence of entrapment" to permit the issue to proceed to a factfinder. *United States v. Hsu*, 364 F.3d 192, 198 (4th Cir. 2004); *see also id.* ("Generally entrapment presents a jury question…."). However, a "court may find as a matter of law that no entrapment existed, when there is no evidence in the record that, if believed by the jury, would show that the government's conduct created a substantial risk that the offense would be committed by a person other than one ready and willing to commit it." *Id.* at 199 (quoting *United States v. Osborne*, 935 F.2d 32, 38 (4th Cir. 1991)).

Typically, a knowing and voluntary guilty plea waives all nonjurisdictional defects, including an entrapment defense. *United States v. McWaine*, 640 F. App'x 242, 243 (4th Cir. 2016) (finding waiver where record contained "no indication that McWaine raised entrapment in any manner before the district court"). But, in *Mayhew*, the Fourth Circuit cautioned that Rule 11 advisements and defendants' expressions of understanding may not always cure an attorney's misconduct or failure to act. 995 F.3d at 180.

In this case, Petitioner avers under penalty of perjury that Cogdell, motivated to benefit by cooperating with the United States and mindful of Petitioner's prior association with drug dealers, created a scheme (with the government's knowledge) to gain Petitioner's trust through a romantic relationship and to persuade her to procure controlled substances and sell them to him. Petitioner

10

asserts that both Driscoll and Hosford failed to investigate her claim and, thus, her guilty plea was neither knowing nor voluntary and, when she specifically asked Hosford about withdrawing her plea, he told her simply that she could not do so. The United States has not meaningfully responded to these allegations. The court finds these allegations, construed in the light most favorable to Petitioner, cannot be resolved on the current record. Thus, the court will reserve ruling on these claims pending an evidentiary hearing.

### 2. Attorney Driscoll

Petitioner also claims that Driscoll (1) failed to "inform [her] fully of the actual terms of the plea offer" concerning the drug charge, and (2) failed to attend her presentence interview and to advise her to share sentence mitigating information with the probation officer.

First, Petitioner contends that Driscoll failed to fully inform her about the terms of her plea concerning the drug charge. Petitioner seems to imply that, had she known that the drug charge, rather than the tax fraud charge, would "drive" the guidelines computation in her case, she never would have pled guilty to the drug charge. The record and Petitioner's own testimony at her arraignment belie this argument.[4]

First, the court notes that the original indictment in this case, which was the operative pleading for nearly a year, charged only drug offenses against Petitioner, including one count of conspiracy and four counts of distribution of controlled substances. DE 5. Second, the plea agreement itself notified Petitioner of her potential exposure at sentencing; in paragraph 3, Petitioner "understands, agrees, and admits" that she faced a "minimum term of imprisonment" of "5 years" and a "maximum term of imprisonment" of "40 years" for the drug distribution charge,

---

[4] See Walker v. Kelly, 589 F.3d 127, 139 (4th Cir. 2009) ("a federal court may consider matters of public record such as documents from prior [ ] court proceedings in conjunction with a Rule 12(b)(6) motion").

11

whereas, for the tax fraud charge, she faced a "minimum term of imprisonment" of "None" and a "maximum term of imprisonment" of "5 years." DE 121. Third, at her arraignment, Petitioner, who reported that she had her "high school diploma [and] some college," testified as follows before she entered her guilty plea:

> THE COURT: Have you had an adequate opportunity to discuss the information and your case with your lawyer?
>
> THE DEFENDANT: Yes, briefly.
>
> THE COURT: Have you, in fact, had those – all the conversations you think you need?
>
> THE DEFENDANT: Yeah. Yes, sir.
>
> THE COURT: Are you fully satisfied with your lawyer's legal services in your case?
>
> THE DEFENDANT: I am.
>
> ***
>
> THE COURT: The court advises you as follows as to the maximum possible penalties as to each charge. As to count 1, maximum penalties are as follows: Not less than five years and not more than 40 years of imprisonment, a fine not to exceed $5 million, or both such fine and imprisonment; not less than four years nor more than life on supervised release; not more than three years of imprisonment upon revocation of supervised release; a 100-dollar special assessment; and restitution, if applicable.
>
> As to count 2, the maximum penalty is not more than five years imprisonment, a $250,000 fine, or twice the pecuniary gain or loss, whatever is greater; not more than three years on supervised release; not more than two years imprisonment upon revocation of supervised release; a 100-dollar special assessment; and restitution, if applicable.
>
> ***
>
> THE COURT: Did you read and discuss the entire plea agreement with your lawyer before you signed it?
>
> THE DEFENDANT: Yes, Your Honor.

12

THE COURT: Does this written plea agreement constitute in its entirety the whole agreement that you have with the government about your case?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand each term of the plea agreement?

THE DEFENDANT: Yes, Your Honor.

\*\*\*

THE COURT: Ms. Becton, has anyone made any promise to you or anyone else that caused you to decide to plead guilty?

THE DEFENDANT: No, Your Honor.

THE COURT: Has anyone attempted in any way to force you to plead guilty?

THE DEFENDANT: No, Your Honor.

THE COURT: Has anyone threatened you or anyone else and thereby caused you to plead guilty?

THE DEFENDANT: No, Your Honor.

\*\*\*

THE COURT: Do you understand that your lawyer's calculation of an advisory guideline range is only an estimate and that the court will determine the advisory guideline range at the sentencing hearing?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that the court has the legal authority in some circumstances to impose a sentence that is more severe or less severe than the sentence called for by the advisory guidelines range? The court can do so via a departure or a variance. Understand?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that it is the court that will determine your actual sentence?

THE DEFENDANT: Yes, Your Honor.

13

THE COURT: You understand that your sentence may be different from any estimate your lawyer or anyone else may have given you?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that if you enter a plea of guilty and the court accepts that plea, then the Court has the legal authority to sentence you to the maximum sentence on each count permitted by law?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you also understand that the maximum sentence on each count permitted by law is the maximum penalty that I just told you about as to each count?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that if the Court impose such a maximum sentence, you would not be allowed to withdraw your guilty plea?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Ms. Becton, has anyone made any promise to you as to what your actual sentence will be?

THE DEFENDANT: No, Your Honor.

THE COURT: Please listen carefully to the following additional consequences that arise if you plead guilty and the Court accepts your guilty plea. If you plead guilty, you'll have to waive your right not to incriminate yourself because the Court will ask you questions about what you did in order to ensure that you are guilty as charged, and you will have to acknowledge your guilt. If you plead guilty, the Court may impose the same punishment as if you had pleaded not guilty and been convicted by a jury. . . . Understand all that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Additionally, regardless of the advisory sentencing guidelines ultimately found to be appropriate, you may not withdraw a guilty plea tendered and conditionally accepted today. Ms. Becton, do you understand all of the rights that I've explained to you?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand all of the possible consequences of pleading guilty?

14

THE DEFENDANT: Yes, Your Honor.

THE COURT: You understand that right now, at this very moment, you still have the legal right to plead not guilty to every offense brought against you?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that if you plead not guilty, you would enjoy all of the trial-related rights and the appeal rights that I've described to you?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You also understand that if you enter a plea of guilty and I accept it, there will not be a trial? Instead, you will have waived or given up your right to a trial as well as all of the trial-related rights that I've just described to you. Do you understand?

THE DEFENDANT: Yes, Your Honor.

\*\*\*

THE COURT: Ms. Becton, have you answered all of my questions truthfully today?

THE DEFENDANT: Yes, Your Honor.

Tr. 4-22, DE 187.

"A defendant's solemn declarations in open court affirming a plea agreement carry a strong presumption of verity, because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (citations omitted) (cleaned up). In light of such presumption, the defendant's sworn statements "present a formidable barrier in any subsequent collateral proceedings." *Id.* (citations omitted). "Thus, in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" *Id.* (citations omitted).

Given Petitioner's testimony at the time she consummated the plea agreement, during which she expressed her understanding of the agreement's terms, her rights, and the consequences of pleading guilty, the court is not convinced by Petitioner's arguments more than two years later that defense counsel failed to fully inform Petitioner of the terms of her plea to the drug charge and that Petitioner did not understand she could be subject to a higher sentence on the drug charge, as opposed to the tax fraud charge. Notably, Petitioner does not contend that Driscoll affirmatively misinformed her about her sentencing exposure or other consequences of pleading guilty. *See Mayhew*, 995 F.3d at 179. In fact, in response to the question, "has anyone made any promise to you or anyone else that caused you to decide to plead guilty?," Petitioner answered, "no, Your Honor." Tr. 16: 17-20, DE 187.

Moreover, Petitioner was advised both in writing (plea agreement) and orally by the court of the maximum penalties attached to each charge, and she expressed her understanding that such penalties could be imposed by the court at sentencing, notwithstanding the plea agreement. The Petitioner also expressed her understanding of the court's advisement, "If you plead guilty, the court may impose the same punishment as if you had pleaded not guilty and been convicted by a jury" and that "right now, at this very moment, you still have the legal right to plead not guilty to every offense brought against you." *Id.* 19: 22-24; 21: 2-5. Absent Petitioner's entrapment defense claim, this case is like that described by the Fourth Circuit in which the record reflects no prejudice under *Strickland*: "a defendant accepts a government plea offer and pleads guilty in accordance with that offer only after a Rule 11 colloquy during which [she] hears a district court's corrective admonitions and indicates [her] understanding of them." *Mayhew*, 995 F.3d at 180. Under the circumstances presented in this case, the court finds the record conclusively establishes that

Petitioner fails to demonstrate she has suffered prejudice due to any failure to fully inform her about the terms of her plea concerning the drug charge.

Finally, Petitioner argues that Driscoll failed to attend the presentence interview and to advise her to share sentence mitigating information with the probation officer. Other than her "alcoholism," Petitioner fails to describe what other information she believes she should have shared at the presentence meeting to mitigate her sentence exposure. At the second sentencing hearing, Hosford advised the court of Petitioner's history of alcohol abuse when requesting a recommendation to drug treatment program; the court granted Hosford's request over the United States' objection. Petitioner identifies no other consequence of Driscoll's absence at the interview and fails to demonstrate how the result of her sentencing hearing would have been different. The court finds the record conclusively shows that Petitioner cannot demonstrate Driscoll's alleged ineffectiveness in preparing Petitioner for sentencing.

### 3. Attorney Hosford

Petitioner argues that Hosford was also ineffective in falsely advising her that she could not withdraw her plea based on her mistaken belief that the tax fraud charges would drive her sentencing; focusing too much on the tax fraud charge and failing to advise her of her sentencing exposure for the drug charge; failing to advise her that cooperating with the government could reduce her sentence; failing to object to the government's statement that she was ineligible for the safety valve and to inform the court of her cooperation efforts, her truthfulness, and her impediments to fully cooperating due to the COVID-19 pandemic and to her community's belief that she was a "snitch"; failing to object to the government's statement that CS-2 and CI-7 were different people; failing to object to her criminal history score; and failing to object to the incorrect computation of the drug weight attributable to her.

17

First, Petitioner asserts that Hosford advised her that she could not withdraw her guilty plea in contravention of Rule 11(d), which, as set forth above, requires a defendant to demonstrate a fair and just reason for requesting the withdrawal. Fed. R. Crim. P. 11(d)(2). For this argument, Petitioner proffers no "fair and just reason" for withdrawal of her plea, except to say that Hosford "never focused on the drug charges" and "led [her] to believe [her] exposure was based on the tax fraud case." DE 229; *see also id.* at 229-1 at 5 ("I did not enter the plea agreement fully informed about the drug counts. I would have never entered the plea if I didn't believe the tax fraud case was driving the guidelines.").[5] As set forth above, the court is not convinced by this argument; Petitioner's charges from the outset focused on her participation in drug distribution and she was not charged with tax fraud until the criminal information was filed in her case on the day of her arraignment. Also, in response to questions from this court, Petitioner, an educated and articulate person, attested that she understood the elements of the charges against her, the maximum possible penalties for each charge, the consequences of pleading guilty to the charges, and all of the terms of the plea agreement. The record conclusively demonstrates Petitioner's failure to show that Hosford fell below an objective standard of reasonableness in these respects.[6]

---

[5] Petitioner also claims she was forced to sign the plea agreement or risk "ma[kin]g the AUSA mad." *Id.* Notably, in her motion to appoint new counsel filed two months after her arraignment, Petitioner expressed her belief that Driscoll seemed to be "working for the United States" because Driscoll did not want to make the AUSA "mad," and in noting that she signed the plea agreement one week before the arraignment, Petitioner stated that she and Driscoll "stood outside in front of the federal courthouse freezing standing six feet apart because [Driscoll] said she was scared of me [COVID-19] so after freezing to death I really couldn't understand certain things but I told her to just give me the paper so I could sign it." DE 127 at 4. In her motion, Petitioner claimed that Driscoll did not fight hard enough to keep her from being detained; did not seem to know how to handle Petitioner's requests; seemed to be more of a "white collar" criminal lawyer; and failed to appear at her presentence interview until the last fifteen minutes; as such, Petitioner requested the appointment of a "private" lawyer, Myron T. Hill. *Id.* at 5. Notably, Petitioner did not claim that she was "forced" into signing the plea agreement nor request that her plea be withdrawn at that time. *See id.*

[6] Petitioner also contends that Driscoll and Hosford violated 42 U.S.C. § 1981 and certain constitutional rights in failing to advise her that signing the plea agreement caused "a conflict of

18

With respect to "cooperation," Petitioner contends that Hosford failed to (1) advise her that working with the government might reduce her sentence, (2) object to the government's statement that she was ineligible for the safety valve, and (3) inform the court of her cooperation efforts and impediments. First, it was evident from the sentencing hearing on September 23, 2021, that, after some discussion with the attorneys regarding the status of Petitioner's efforts to cooperate for safety valve eligibility, including approximately three meetings with the government, the court permitted Hosford to discuss with Petitioner whether she wanted to continue the hearing to permit an additional "debrief" with the United States. Tr. 25-27, DE 160. After this discussion, Hosford responded that Petitioner was "amenable to sitting down and trying another time." *Id.* 27: 9-16. Over the United States' objection concerning Petitioner's truthfulness, the court then explained:

> THE COURT: Okay. I take the government's response seriously. Nevertheless, the stakes for this individual are so high, and her failure to achieve the safety valve in this case -- I heard all the arguments of counsel. This Court believes that this is a drug case. That's what's driving these guidelines. And I've heard nothing to suggest that this is not a drug case. So the Court is gonna afford this defendant the continuance that's been requested and give her the opportunity to come into compliance with the safety valve. Ms. Becton, do not mistake kindness for weakness. This is your opportunity to treat very seriously these guidelines.
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: All right.
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Okay. We'll continue this matter.

---

interest" between herself and Driscoll and Hosford, since Driscoll was motivated to assist the AUSA and Hosford erroneously told her she could not withdraw her plea. Petitioner does not identify or describe the alleged "conflict of interest" and, thus, the court is unable to determine that counsels' representation was ineffective in failing to advise her of it.

*Id.* 30: 6-23. The court is not convinced that Petitioner "was not advised" regarding the sentencing benefits of cooperation.

At the second sentencing hearing, the Assistant United States Attorney (AUSA) explained in more detail the parties' efforts at cooperation, saying that during debriefs, Petitioner provided some untruthful responses and, when confronted, provided no additional information about the topic; further, she was provided the opportunity to "work proactively" with law enforcement but was "either unable or unwilling to do so successfully." Tr. 20:17-25. Hosford did not lodge an objection. However, Petitioner fails to identify any area in which she was actually "truthful" during meetings with the government and to demonstrate how Hosford *knew* that she was being "truthful." Further, Petitioner fails to explain how Hosford knew she purportedly experienced impediments to cooperating during her pretrial release when he was not representing her. Moreover, unlike her "entrapment" arguments and objections to the PSR expressed in response to the court's questions and during her allocution, Petitioner mentioned nothing at either hearing concerning her efforts or impediments to cooperate, despite the court's clear statements regarding the importance of them, and she does not claim that Hosford failed or refused to explain these efforts or impediments at the sentencing hearing despite her request to do so. *See supra*; *see also* Tr. 27: 5-10 (prior to imposing sentence, the court stated, "after having heard this explanation previously and offered this defendant every opportunity to become safety valve eligible, this Court, I believe, has expended every available judicial resource in an attempt to give her the benefit of whatever doubt existed."). The court finds the record conclusively shows Petitioner's failure to demonstrate that Hosford performed deficiently with respect to her cooperation and/or safety valve eligibility.

Petitioner also contends that Hosford failed to object to the government's response to the court's question about whether "CS-2" and "CI-7," so characterized in the PSR, were two different people. During a bench conference at the second hearing, the court asked counsel:

> THE COURT: This portion will be under seal. I've got two confidential sources. I've got a CS-2 and a CS-7 [sic]. Seven is the boyfriend.
>
> MR. LEMMON: Correct.
>
> THE COURT: And so we've got 2, who's entirely separate from the boyfriend who's the one who's placing all of those initial drug purchases. Is that correct?
>
> MR. LEMMON: Correct.
>
> THE COURT: All right. Thank you.

Tr., DE 192. Based on this information, when later discussing the nature of the charges, the court noted that the drug "purchases were made not by the individual identified by Ms. Becton as her boyfriend but by a different confidential source who participated in these drug transactions." Tr. 30: 24 – 31: 2, DE 191.

Petitioner argues that CS-2 and CI-7 (erroneously referenced by the court as "CS-7") were both Alexander Cogdell,[7] her former boyfriend. She claims that Hosford knew this, yet failed to object during the bench conference; Petitioner implies that her custodial sentence would not have been as high had the court known that CS-2 and CI-7 were not different people.

The PSR is inconclusive on this issue; however, construing it in the light most favorable to Petitioner, the court finds it is possible that CS-2 and CI-7 are the same person. Even if true, however, Petitioner fails to mention that her history does, in fact, reflect another drug transaction, which involved two kilograms of cocaine, with at least one additional individual. *See* PSR ¶ 37. Thus, the court would not have been entirely incorrect in believing Petitioner participated in drug

---

[7] The court notes that Cogdell's name is spelled "Caldell" in the transcripts of the relevant hearings.

transactions involving more than one person. Moreover, Petitioner's guidelines range, 151-188 months, was computed using drug weight, not the number of people to whom Petitioner sold illegal drugs. In fact, the court noted, "I think the arguments involving CS-2 seem to me to be separate transactions with sufficient drug weight to drive the guideline that's applicable in this case." Tr. 31: 3-6, DE 191. The court finds its error, if any, harmless, and that Petitioner has failed to show Hosford's representation deficient in the respect.

Petitioner summarily argues that "[b]oth Counsels were ineffective for failing to object or argue my Level II Criminal History on my pre-sentencing report or in court." DE 229-1 at 2. Petitioner wholly fails to identify any error or deficiency in probation's computation of her criminal history score, and she did not object prior to or during her sentencing hearing. The court finds no basis on which to find Hosford deficient in this regard.

Finally, Petitioner contends that Hosford failed to object to probation's "miscalculation" of the drug weight attributable to her. She states, "[s]pecifically, the cocaine conversion: December 19, 2019 = 134.6625g and January 2, 2020 = 134.6625g totaled 269.325 grams not 2,269.325 as stated in PSR and in Court." DE 229-1 at 8. Petitioner fails to acknowledge the two kilograms of cocaine she sold in January 2020, as noted in paragraph 37. DE 170 at 8. The court finds the calculation correct and, thus, no deficient conduct by Hosford. Likewise, as set forth below in Section IV.C., Hosford's representation did not fall below an objective standard of reasonableness regarding probation's calculation of methamphetamine weight attributable to Petitioner, "because counsel is not deficient in failing to raise a meritless argument." *Marsh v. United States*, Nos. 7:12-CR-138, 7:14-CV-131, 2015 WL 13735426, at *4 (E.D.N.C. Oct. 28, 2015), *recommendation adopted*, 2016 WL 591767 (E.D.N.C. Feb. 12, 2016); *see also Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998) (holding that attorneys are "not required to raise

22

meritless arguments to avoid a charge of ineffective assistance of counsel"); *Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996) ("Failure to raise a losing argument . . . does not constitute ineffective assistance of counsel"). Put another way, "[a]n attorney's failure to raise a meritless argument [] cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue." *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999).

The record in this case conclusively shows that, other than the "entrapment defense" issue, Petitioner has failed to demonstrate any violations of her Sixth Amendment right to effective assistance of counsel and, therefore, her motion is denied in these respects.

### B.    Prosecutorial Misconduct

To establish a claim for prosecutorial misconduct, Petitioner must demonstrate "that the prosecutor's remarks or conduct were improper" and that they prejudicially affected her substantial rights. *United States v. Altmann*, 691 F. App'x 74, 75 (4th Cir. 2017) (quoting *United States v. Caro*, 597 F.3d 608, 624-25 (4th Cir. 2010)); *see also United States v. Allen*, 491 F.3d 178, 191 (4th Cir. 2007) ("To prevail on a claim of prosecutorial misconduct, a defendant must show (1) that the prosecutor's remarks and conduct were, in fact, improper and (2) that such remarks or conduct prejudiced the defendant to such an extent as to deprive the defendant of a fair trial.").

Petitioner contends that the prosecution's "misconduct" affected her substantial rights and the outcome of her case, when the AUSA "[led] the court to believe there were three [sic][8] confidential informants, confidential sources including [her] boyfriend"; "never informed the court that the CI was a registered sex offender"; failed to inform her that signing the plea agreement would result in a "direct conflict of interest between [herself] and [her] attorneys"; and failed to

---

[8] Petitioner corrects this statement in her reply brief, noting only two persons, CS-2 and CI-7. DE 241 at 3.

inform the court that it had obtained intelligence about her co-Defendants "as early as 2018." The United States responds that Petitioner's claims are procedurally defaulted or, otherwise insufficient to state plausible claims for relief.

Claims of error that could have been raised on direct appeal, but were not, are procedurally barred unless the petitioner shows both cause and prejudice, or demonstrates that he is actually innocent of the offense. *Bousley v. United States*, 523 U.S. 614, 622 (1998); *United States v. Fugit*, 703 F.3d 248, 253 (4th Cir. 2012). To show "cause and prejudice," the petitioner must establish some cause for his failure to raise the challenge at the appropriate time and must show that actual prejudice resulted. *United States v. Frady*, 456 U.S. 152, 167 (1982). Petitioner acknowledges that she did not raise the substance of her prosecutorial misconduct claims on appeal but contends that this procedural default should be excused because appellate counsel was ineffective. Ineffective assistance of counsel can establish cause to excuse procedural default. *Fugit*, 703 F.3d at 259.

Even if the court were to find cause for Petitioner's failure to appeal the prosecutorial misconduct claims, it finds she has not demonstrated actual prejudice. The court has resolved the issue concerning the confidential source/informant and finds that the error, if any, did not substantially affect the outcome of this case. Likewise, the court has resolved the "conflict of interest" issue and finds no misconduct on the part of the prosecution. Further, Petitioner is simply incorrect that neither probation nor the United States informed the court that it had investigated her co-Defendants "as early as 2018"; the PSR clearly describes the government's investigative efforts starting in October 2018. *See* DE 170 at 5.

Finally, Petitioner contends that the AUSA never informed the court that Cogdell (CS-2 and/or CI-7) was a "registered sex offender." Even assuming this information is accurate (*see* DE

24

229-1 at 19), Petitioner herself informed the court during her allocution at the sentencing hearing in February 2022 that Cogdell is a "convicted sex offender and felon." Tr. 13: 19 – 14: 1, DE 191. She faults the AUSA for stating at the hearing, "he was a very reliable, frequently used cooperator who built many federal cases. We've had no issues as far as his truthfulness." *Id.* 24: 18-20. However, Petitioner fails to show how the AUSA's statement is false or contradictory to her own statement. Both were presented to the court at sentencing and considered. The court finds no misconduct by the prosecution in this respect.

The record conclusively establishes Petitioner's prosecutorial misconduct claims are procedurally barred or, otherwise, fail to state plausible claims and, thus, her motion to vacate her conviction or sentence in this respect is denied.

### C. Substantive Change in the Law

For this argument Petitioner relies on "a substantive change to the law that the U.S. Supreme Court explicitly made retroactive 2252(h) [sic]" with respect to "drug purity disparities/new case law Robinson."[9] DE 229-1 at 8. Specifically, Petitioner characterizes as "unjust and extreme" the "disproportionate sentencing for 'pure ice' and methamphetamine mixture." *Id.*

The court is not convinced that this is a proper argument for an original § 2255 petition. Petitioner's citation to "2252(h)"—likely meant to be § 2255(h)—demonstrates that she relies on case law interpreting that statute, which pertains to second or successive § 2255 petitions. As for the requirement of a "substantive change in the law," the Fourth Circuit has determined that, if a petitioner is unable to meet the requirements for filing a successive petition under § 2255(h), he

---

[9] The court has searched for a recent decision from the Supreme Court or the Fourth Circuit involving a "Robinson" and a discussion of the alleged disparity for methamphetamine in the Sentencing Guidelines, but found no such case.

may proceed under the "savings clause" in § 2255(e) if he can demonstrate (1) "at the time of conviction, settled law of this circuit or the Supreme Court established the legality of the conviction"; (2) "subsequent to the prisoner's direct appeal and first § 2255 motion, *the substantive law changed* such that the conduct of which the prisoner was convicted is deemed not to be criminal"; and (3) "the prisoner cannot satisfy the gatekeeping provisions of § 2255 because the new rule is not one of constitutional law." *In re McNeill*, 68 F.4th 195, 203–04 (4th Cir. 2023) (quoting *In re Jones*, 226 F.3d 328, 333–34 (4th Cir. 2000)) (emphasis added); *see also Jones v. Hendrix*, 599 U.S. 465, 471 (2023).

These circumstances do not exist in this case. Even if they did, the court finds that the "law" surrounding sentencing disparities among a "mixture" of methamphetamine, "actual" methamphetamine, and "ice"[10] has not substantively changed since Petitioner was sentenced, no less in such a way as to deem Petitioner's criminal conduct "not to be criminal." In her reply brief, Petitioner cites to no legal source more recent than 2019. In the Fourth Circuit, "district courts have discretion to reject the [methamphetamine] Guidelines on policy grounds and, as [defendant]

---

[10] A court in this circuit has cogently explained the "types" of methamphetamine referenced in the Guidelines:

> The United States Sentencing Guidelines distinguish among three types of substances commonly referred to as methamphetamine: (1) "methamphetamine," which is defined as the total mixture containing any detectable amount of the controlled substance; (2) "actual methamphetamine," which is defined as the controlled substance itself, disregarding the uncontrolled portions of a mixture; and, (3) "ice," which is defined as a mixture consisting of at least 80% actual methamphetamine. *United States v. Yates*, 98 F.4th 826, 832–33 (6th Cir. 2024) (citing U.S.S.G. § 2D 1.1(c), Notes to Drug Quantity Table (A)–(C)). The Sentencing Guidelines give "actual" methamphetamine and "ice" a weight ten times greater than "mixed" methamphetamine, meaning for example that 45 kilograms of "mixed" methamphetamine would have the same sentencing consequences as only 4.5 kilograms of "actual" methamphetamine or "ice." *See id*.; U.S.S.G. § 2Dl.l(c).

*United States v. Patterson*, No. 3:19CR131, 2024 WL 4374950, at *2 n.2 (E.D. Va. Oct. 2, 2024).

26

note[s], some have done so. But just because you can does not mean you must." *United States v. Maldonado-Pineda*, No. 21-4353, 2022 WL 17592129, at *2 (4th Cir. Dec. 13, 2022) (quoting *United States v. Williams*, 19 F.4th 374, 378 (4th Cir. 2021)). Petitioner has cited, and the court has found, no case law changing this interpretation of the applicable guidelines. *See United States v. Andres*, No. 23-4196, 2024 WL 4200043, at *6 (4th Cir. Sept. 16, 2024), *cert. denied*, No. 24-6186, 2025 WL 299566 (U.S. Jan. 27, 2025) ("We have already held that a district court does not abuse its discretion in declining to reject the Ice Guidelines for policy reasons.") (citing *Williams*, 19 F.4th at 378).

Furthermore, and most importantly, the "disparity" about which Petitioner complains makes no difference in her guidelines computation. Petitioner asserts that "[b]y converting it all by the actual methamphetamine conversions [as opposed to using the "methamphetamine" rate], this made my converted drug weight extremely higher from 11,051.02 kg to 27,075.02 kg." DE 229-1 at 8; *see also* DE 241 at 3. Assuming Petitioner's calculations are correct, the court finds that she would be subject to the same base offense level, 34, which requires "at least 10,000 KG but less than 30,000 KG of converted drug weight" (U.S.S.G. 2D1.1(c)), whether the drug weight was computed using the actual or methamphetamine rates.

The court finds the record conclusively establishes no proper basis on which to vacate Petitioner's sentence in this respect, and Petitioner's motion is denied.

**IV. Conclusion**

The court has concluded that an evidentiary hearing under § 2255(b) is necessary to resolve Petitioner's Sixth Amendment claims (ineffective assistance of counsel) involving an entrapment defense. Otherwise, the record has "conclusively show[n] that [Petitioner] is entitled to no relief." 28 U.S.C. § 2255(b). Each of Petitioner's additional claims of ineffective assistance of counsel

fail to meet *Strickland*'s requirements. Moreover, Petitioner's prosecutorial misconduct claims are procedurally barred, in that Petitioner cannot demonstrate she suffered actual prejudice as the record reflects that the prosecution did not engage in any misconduct that would have changed the outcome of the sentencing in this case or, otherwise, prejudiced Petitioner's rights. Petitioner's final argument was not properly raised in the present motion but, even if it were, no substantive change in the law regarding sentencing disparities in the guidelines concerning methamphetamine offenses occurred since the sentencing hearing and any "disparity" in Petitioner's drug weight calculation makes no difference in the guidelines computation. Accordingly, absent the entrapment defense issue, Petitioner does not allege plausible claims of violations of her constitutional rights sufficient to justify an order vacating her conviction and/or sentence.

The court further finds that reasonable jurists would not find the court's treatment of Petitioner's claims, other than those involving the entrapment defense, debatable or wrong, and none of the issues are adequate to deserve encouragement to proceed further. *See Buck v. Davis*, 580 U.S. 100, 122 (2017); *Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). The court therefore denies a certificate of appealability as to these claims.

The court will hear evidence concerning the entrapment defense issue (as described herein) on **Monday, June 23, 2025, at 10:30 a.m.** in Wilmington. The Office of the Federal Public Defender shall appoint counsel to represent Petitioner for this limited purpose.

Petitioner's other claims fail as a matter of law. Accordingly, the court RESERVES RULING IN PART regarding Petitioner's claims involving an entrapment defense (as described herein); and GRANTS IN PART the United States' motion to dismiss [DE 233], DENIES IN

PART Petitioner's Section 2255 petition [DE 229], and DENIES a certificate of appealability as to all other claims.

SO ORDERED this  25Th  day of April, 2025.

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE